## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:14-cv-24659-KMM

NORMA INES FEIJOO,
f/k/a NORMA BORROTO,

        Plaintiff,

v.

GEICO GENERAL INSURANCE
COMPANY,

        Defendant.

_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant GEICO General Insurance

Company's ("GEICO") Motion for Summary Judgment (the "Motion") (ECF No. 50). Plaintiff

Norma Feijoo ("Feijoo") filed a Response in Opposition to Defendant's Motion (the "Response")

(ECF No. 77), and Defendant filed a Reply (the "Reply") (ECF No. 88). The Motion is now ripe

for review. For the reasons set forth below, Defendant's Motion for Summary Judgment is

GRANTED.

### I.    BACKGROUND

Upon a review of the record, including the exhibits submitted, the following facts are

undisputed and supported by the record before this Court.[1]

---

[1]    The facts herein are taken from Defendant's Motion for Summary Judgment (ECF No. 50); Defendant's Statement of Material Facts (ECF No. 51) and supporting documents; Plaintiff's Response (ECF No. 78) and supporting documents; and Defendant's Reply (ECF No. 89). All facts are construed in the light most favorable to Plaintiff as the non-movant. Additionally, under the local rules of this Court, all facts set forth in the movant's statement which are supported by evidence in the record are deemed admitted unless controverted by the non-moving party. *See* S.D. Fla. L.R. 56.1.

On January 6, 2008, Jose Garcia ("Garcia") was approaching an intersection in Miami when he failed to stop prior to rear-ending a vehicle driven by Luis Borroto, in which Plaintiff, Norma Feijoo, was a passenger.  On the date of the accident, Garcia was insured under an automobile policy issued by GEICO that was effective from January 1, 2008 to April 9, 2008 (the "Policy") (ECF No. 51-1).  The Policy provided bodily injury ("BI") liability coverage in the amount of $25,000 per person and $50,000 per accident.  *Id.*

The same day, Garcia's son reported the accident to GEICO, and GEICO opened a claim and began its investigation.  On January 10, 2008, GEICO received an estimate for $809.88 to repair the damage to Feijoo's vehicle.  As part of its claim processing, GEICO noted in its records that the accident did not result in any damage to glass and there was no air bag deployment.

Also on January 10, 2008, Feijoo underwent X-rays of the cervical, lumbar and dorsal regions of her spine at a radiology center.  The X-rays showed both osteoporosis and mild degenerative changes, including disc space narrowing.  The X-rays showed no evidence of fracture in any of Feijoo's spinal regions.  On January 29, 2008, GEICO learned that Feijoo was seeking treatment at Fast Rehabilitation Center.  That same day, GEICO attempted to contact Garcia regarding Feijoo's claim but was told he was unavailable.

On February 28, 2008, GEICO dispatched field representative Mabelle O'Neal to visit Feijoo.  O'Neal was informed that Feijoo was still receiving treatment for her injuries.  The following day, GEICO mailed a letter to Teresa Garcia, Garcia's wife, advising her that Feijoo "may still be treating for injuries from this loss" and that they "will continue to keep [her] informed of any developments on this claim."  (ECF 51-6).  Several similar letters were sent to Mrs. Garcia from March 27, 2008 through April 2, 2009 apprising her of the status of Feijoo's

2

claim. During this period of time, GEICO attempted on multiple occasions to determine whether Feijoo was still receiving treatment and if she had experienced any out of pocket expenses.

On June 12, 2008, GEICO received a Letter of Representation ("LOR") from attorney Nicholas Thompson of Reifkind & Thompson, P.A. advising that his office had been retained to represent Feijoo in relation to the January 6, 2008 accident. On the same date, Thompson's office advised GEICO that they had not yet obtained any treatment information for Feijoo. Upon receiving the LOR, GEICO's claims adjuster, Ms. Hart, forwarded a certified copy of the Policy to Thompson on June 24, 2008 and advised him that an affidavit of coverage would be provided under separate cover. Following up on these communications, Hart contacted Thompson's office on June 27, 2008 to request information regarding Feijoo's treatment status.

On July 30, 2008, Garcia contacted GEICO regarding Feijoo's treatment status and was informed she was still receiving treatment and that GEICO would keep him updated. Hart contacted Thompson in August and October to obtain information on Feijoo's treatment status and she was advised that Thompson's office was still collecting medical records and did not know when a demand would be sent. Hart once again contacted Thompson's office on November 10, 2008 to get an update on Feijoo's treatment status and was informed that she was no longer in treatment, but that they were still collecting medical records in order to send a demand. On December 19, 2008 and January 10, 2009, Hart attempted to reach Thompson again to request information on Feijoo's treatment status.

From January through July of 2009, GEICO sent multiple letters to Thompson requesting medical records and documentation relating to Feijoo's BI claim so that it could be evaluated. In addition to the letters, GEICO contacted Thompson's office six times between February 10, 2009

3

and July 5, 2009 to obtain information on Feijoo's treatment status, request a personal injury protection ("PIP") log, and find out when a demand could be expected.

On August 31, 2009, GEICO received a letter from Thompson's office with a time-limited demand to settle Feijoo's claim against Garcia for the nominal policy limit of $25,000 by September 28, 2009. (ECF No. 51-10). A copy of the police report from the accident and a complete set of Feijoo's medical records were enclosed with the letter as part of the demand package. Records from Feijoo's treatment by Dr. Ralph Miniet of Fast Rehabilitation Center showed that he diagnosed her with a sprain/strain in three regions of her spine and assigned her a 5% permanent impairment rating. The records also indicated that Feijoo was under Miniet's care from January 10, 2008 through March 21, 2008 with a total cost of treatment of $13,073. Also included in the demand package was the medical opinion of Dr. Barry Schapiro, a board certified orthopedic surgeon, who evaluated and treated Feijoo from June 4, 2009 until July 30, 2009. According to Dr. Schapiro, Feijoo sustained a 10% permanent physical impairment and possibly would need surgery in the future if her injuries did not improve.

On September 9, 2009, GEICO sent correspondence to Garcia regarding the status of Feijoo's claim. The letter stated, "The automobile insurance policy you have . . . provides you with personal Bodily Injury liability limits of $25,000 for any one person injured in the accident." (ECF No. 51-12). It further stated that Feijoo's current demand to settle the claim was for the policy limit. *Id.* The letter also stated that if GEICO was "unable to resolve this claim, it is possible that a law suit may be filed against" Garcia. *Id.* The letter advised that GEICO would provide counsel to Garcia in the event of a lawsuit and that Garcia had the right to retain independent counsel. *Id.* Finally, the letter noted that "the possibility exists of a judgment that exceeds your policy limits" and that Garcia would be responsible for any excess. *Id.*

4

GEICO responded to Feijoo's demand shortly thereafter. (ECF No. 51-13). In their response, GEICO asserted that because the accident was minor the demand amount was "extremely excessive." *Id.* GEICO also expressed concern that Feijoo did not seek any additional treatment until fifteen months after her initial treatment when she ultimately consulted Dr. Schapiro. *Id.* As a result, GEICO offered Feijoo $3,484 to settle her injury claim. *Id.* Approximately a month later, Thompson contacted GEICO and told them that he was not yet ready to discuss Feijoo's claim. After a period of waiting, GEICO finally heard from Thompson by a phone call on December 4, 2009. Thompson informed GEICO that Feijoo was not interested in settling anywhere near their offer and he would discuss settlement amounts with her and then call back.

On February 1, 2010, Garcia informed GEICO that a suit was filed against him in state court by Thompson on behalf of Feijoo. Two days later, GEICO sent a letter to Garcia informing him that they had referred defense of the suit to Timothy Harrington, "a salaried GEICO employee who represents [GEICO's] insureds in automobile . . . lawsuits." (ECF No. 51-15). GEICO also informed Garcia that he had the right to obtain his own attorney to protect his interest for any amount that may be in excess of the policy limits. *Id.*

During the course of discovery for the underlying action, Garcia noted that Feijoo had told him at the scene of the accident that she was not injured. Feijoo acknowledged this statement in her September 14, 2010 deposition. Borroto Dep. 20:8–15 (ECF No. 51-17). She also testified that beyond having her blood pressure taken, she had refused any further medical treatment immediately after the accident. *Id.* at 20:17–21:3. Feijoo also stated that she didn't go to the hospital that day because she "didn't believe that it was necessary." *Id.* at 21:18–23.

Early in November 2010, Feijoo's counsel sent a letter to Garcia's attorney asserting that there was no evidence that Feijoo's spinal injuries existed before the accident and that after Feijoo undergoes surgery, her medical bills will likely be in excess of $40,000. (ECF No. 51-18). Enclosed with the letter was a settlement proposal filed on behalf of Feijoo in the amount of $12,500. (ECF No. 51-19). The letter and settlement offer were forwarded to Garcia on November 17, 2010. (ECF No. 51-20).

On January 4, 2011, GEICO requested that Garcia's counsel send Feijoo's MRI films to be re-read. It was also confirmed at this time that Feijoo was scheduled to undergo an independent medical examination ("IME") on January 28, 2011. Based upon a review of Feijoo's MRI, GEICO's consulting radiologist, Dr. Abrams, opined that Feijoo's injuries were degenerative. On January 19, 2011, GEICO authorized Garcia's counsel to file a settlement proposal in the amount of $5,125 on Garcia's behalf.

On March 1, 2011, Garcia's counsel received the results from the IME conducted by Dr. Jay Stein. (ECF No. 51-23). In his report, Dr. Stein noted that Feijoo acknowledged that the subject accident was not a very hard impact and she described no symptoms or injuries at the time of the accident. Dr. Stein also stated that had a significant injury to Feijoo's spine occurred at the time of the accident, her symptoms would have been immediate or nearly so. Additionally, Dr. Stein opined that Feijoo's injuries were chronic, degenerative, pre-existing, and unrelated to the accident. Ultimately, Dr. Stein concluded that Feijoo did not sustain a permanent injury in the January 6 car accident.

One week later, Dr. Stein issued an additional report based upon his review of Feijoo's medical records from Fast Rehabilitation Center. (ECF No. 51-24). He noted that Feijoo's medical treatment and cost of treatment appeared to be excessive and unnecessary. Dr. Stein

also stated that Feijoo's consultation and treatment with Dr. Schapiro in 2009 was unnecessary and unrelated to the car accident. On April 6, 2011, Feijoo's counsel sent a letter to Garcia's attorney conveying Feijoo's willingness to accept the $25,000 policy limit to settle her claim prior to trial. (ECF No. 51-25) ("We remain ready, willing and able to accept the $25,000.00 if it is offered prior to the commencement of trial."). The offer expired and the underlying action proceeded to trial.

During the course of trial, Feijoo testified that she would now consider having surgery despite a statement she made to the contrary during her deposition. (ECF No. 51-26). On April 13, 2011, the state court jury returned a verdict awarding Feijoo a total of $105,300 in damages, with $60,300 allocated for future medical expenses, $30,000 for future pain and suffering, and $15,000 for past pain and suffering. After the entry of final judgment in the underlying action, Garcia assigned his rights to Feijoo to bring the instant action. On November 20, 2014, Feijoo filed a complaint in state court setting forth allegations of bad faith against GEICO. Shortly thereafter, GEICO removed the case to federal court.

## II.     LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed R. Civ. P. 56. An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *Id.* Additionally, speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

7

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Id.* (citation omitted). In assessing whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); *see also* Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). But if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

GEICO now moves for summary judgment, claiming that no reasonable jury could find that it acted in bad faith in handling Feijoo's claim against Garcia. In so moving, GEICO argues, that it responded quickly and appropriately in investigating Feijoo's claim and it kept its insured informed. Def.'s Mot. for Summ. J. at 10. Additionally, GEICO asserts that this case merely reflects a disagreement over the value of Feijoo's claim. *Id.* at 11. Feijoo responds that GEICO's employees demonstrated bad faith by focusing on decreasing Average Loss Payments ("ALP") and increasing their profit-based bonus rather than protecting the rights of their insured. Pl.'s Opp'n to Mot. for Summ. J. at 1. Feijoo argues that to accomplish this task, GEICO

8

"rejected valid medical evidence, 'low-balled' the value of [her] claim, and ignored multiple settlement opportunities." *Id.* As a result, Feijoo contends that genuine issues of material fact remain "as to whether GEICO's self-serving and profit-driven decisions caused a failure to settle" Feijoo's claim. *Id.* at 2.

Based on the record evidence, the Court finds that no rational trier of fact could find that GEICO acted in bad faith in handling Feijoo's claim against Garcia. Accordingly, because there is no genuine issue as to any material fact, GEICO is entitled to summary judgment.

## A. Applicable Law

It is well established that a federal court sitting in diversity is required to apply the substantive law of the forum state. *Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009) (per curiam).[2] A fundamental tenet of Florida law is that "an insurer owes a duty of good faith to its insured." *Mesa v. Clarendon Nat. Ins. Co.*, No. 14-12868, 2015 WL 5059496, at *3 (11th Cir. Aug. 28, 2015) (quoting *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 672 (Fla. 2004)). A breach of this duty can give rise to a cause of action for bad faith. *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 898 (Fla. 2010). Florida courts afford injured third parties the right maintain a bad faith claim directly against an insurer. *Macola v. Gov't Emps. Ins. Co.*, 953 So. 2d 451, 455 (Fla. 2006); *Thompson v. Commercial Union Ins. Co.*, 250 So. 2d 259 (Fla. 1971). A valid bad faith claim requires "a causal connection between the damages claimed and the insurer's bad faith." *Perera*, 35 So. 3d at 903-04.

---

[2] Moreover, if the highest state court in the forum state has not yet decided an issue of substantive state law "federal courts are bound by decisions of [the] state's intermediate appellate courts unless there is persuasive evidence that the highest state court would rule otherwise." *King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 158 (1948).

9

According to the Florida Supreme Court, the duty of good faith includes the following requirements:

> This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

*Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980) (citations omitted).

This duty requires an insurer to handle claims against its insured with "the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Id.*; *see also Farinas v. Fla. Farm Bureau Gen. Ins. Co.*, 850 So. 2d 555, 559 (Fla. 4th DCA 2003). "The essence of an insurance bad faith claim is that the insurer acted in its own best interests to the detriment of the insured; the insurer failed to act timely and thereby exposed the insured to an excess judgment." *Johnson v. Geico Gen. Ins. Co.*, 318 F. App'x 847, 849 (11th Cir. 2009).

Florida law is clear that "the question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the totality of the circumstances standard." *Berges*, 896 So. 2d at 680. Although negligence is relevant to the question of good faith, the Florida Supreme Court has expressly stated that the standard "for determining liability in an excess judgment case is bad faith rather than negligence." *Campbell v. Gov't Emps. Ins. Co.*, 306 So. 2d 525, 530 (Fla. 1974). Additionally, bad faith "may be inferred from a delay in settlement negotiations which is willful and without reasonable cause." *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991).

The duty of good faith does not require an insurer to "act perfectly, prudently, or even reasonably. Rather, insurers must 'refrain from acting solely on the basis of their own interests

10

in settlement.'" *Novoa v. Geico Indem. Co.*, 542 F. App'x 794, 796 (11th Cir. 2013) (quoting *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 58 (Fla. 1995)). Moreover, the good faith requirement does not deprive an insurer of its duty and right to fully investigate claims. *Johnson*, 318 F. App'x at 851; *DeLaune v. Liberty Mut. Ins. Co.*, 314 So. 2d 601, 603 (Fla. 4th DCA 1975).

Ordinarily, determining whether an insured acted in bad faith is a factual consideration to be decided by the jury. *Mesa*, 2015 WL 5059496, at *4; *Kearney v. Auto-Owners Ins. Co.*, 664 F. Supp. 2d 1234, 1243 (M.D. Fla. 2009) (noting that it is a rare case when "a court can rule on a bad faith claim as a matter of law at summary judgment"); *Berges*, 896 So. 2d at 680 ("Each case is determined on its own facts and ordinarily the question of failure to act in good faith with due regard for the interests of the insured is for the jury."). However, summary judgment in bad faith actions is appropriate where the undisputed facts would allow no reasonable jury to conclude the defendant acted in bad faith. *See, e.g., Mesa*, 2015 WL 5059496, at * 5; *Novoa*, 542 F. App'x at 796; *Valle v. State Farm Mut. Auto. Ins. Co*, 394 F. App'x 555, 556 (11th Cir. 2010); *Clauss v. Fortune Ins. Co.*, 523 So. 2d 1177, 1178 (Fla. 5th DCA 1988); *Caldwell v. Allstate Ins. Co.,* 453 So. 2d 1187, 1190 (Fla. 1st DCA 1984).

## B. The Undisputed Facts Show that No Reasonable Jury Could Conclude that, Under the Totality of the Circumstances, GEICO Acted in Bad Faith in Handling Feijoo's Claim Against Garcia

Viewing the facts in the light most favorable to Feijoo, this Court is unpersuaded that GEICO's handling of the claim against Garcia rose to the level of bad faith. Feijoo has not demonstrated a question of material fact as to whether GEICO acted in bad faith and to the detriment of its insured. Although GEICO's conduct, as a whole, must be considered in

11

determining bad faith, Feijoo isolates GEICO's conduct in an effort to show bad faith.[3] However, when considered in context, it is evident from the undisputed record that at all times GEICO was attempting to settle the claims against Garcia quickly and completely while undergoing a reasonable investigation of Feijoo's claim.

The accident was reported to GEICO on January 6, 2008 and GEICO received the first demand letter approximately twenty months later. GEICO attempted multiple times to obtain Feijoo's treatment information long before a demand was ever made. From the time GEICO was notified that Feijoo had retained counsel (June 12, 2008) until receipt of Feijoo's demand for the policy limit (August 31, 2009), GEICO repeatedly attempted to obtain medical records and documentation in order to evaluate Feijoo's claim. Throughout this period of time, GEICO also kept Garcia informed of the status of Feijoo's claim.

Within ten days of receiving Feijoo's initial demand, GEICO contacted Garcia to inform him of the demand and advise him of the potential for a lawsuit if the parties did not reach a settlement. Additionally, GEICO notified Garcia that it would provide counsel to him and that he had the right to independent counsel to protect his interests. Lastly, GEICO warned that an excess judgment may be possible and Garcia would be responsible for any amount beyond his $25,000 policy limit. These communications fall well within the parameters of an insurer's good faith duty under Florida law. *See Gutierrez*, 386 So. 2d at 785.

---

[3]     A vast majority of Feijoo's "disputed facts" are not supported by the record. Instead, it appears that Feijoo seeks to have this Court "'scour the record' looking for evidence to support [her] arguments." *Rosa-Nales v. Carnival Corp.*, No. 12-22172-CIV, 2013 WL 7219411, at *5 (S.D. Fla. Dec. 11, 2013). This position is untenable as "it is the nonmovant's obligation to specifically bring the factual dispute to the court's attention by rebutting the movant's factual statements on a paragraph by paragraph basis and with specific citations to the record." *Joseph v. Napolitano*, 839 F. Supp. 2d 1324, 1329 (S.D. Fla. 2012).

12

However, communication with the insured is merely one of the factors to consider when evaluating an insurer's duty of good faith. *Berges*, 896 So. 2d at 60. Although Feijoo contends that GEICO's failure to settle was evidence of bad faith, there is no genuine dispute of material fact to show that GEICO's other efforts were inconsistent with its duty of good faith under Florida law.[4] Rather, the undisputed record is clear that GEICO did not act solely on the basis of its own interests in settlement, but instead fulfilled its obligations to Garcia to act in good faith.

GEICO immediately provided counsel to Garcia once Feijoo filed the underlying action against him in state court. During the trial discovery period, GEICO received a demand letter from Feijoo in the amount of $12,500. Once again, GEICO informed Garcia of the settlement request and continued to evaluate Feijoo's claim. GEICO then timely responded to Feijoo's latest request with a counteroffer of $5,125. This offer expired while GEICO sought an independent review of Feijoo's medical records, including her MRI results. Upon conclusion of the review, GEICO submitted the medical findings to Garcia as well as Feijoo's counsel.

Although GEICO's reviewing doctor opined that Feijoo's injuries were chronic, degenerative and pre-existing, Feijoo responded with a settlement demand for the full $25,000 policy limit one week before trial. Common sense dictates that based on the facts and evidence known to GEICO at the time of this "eleventh hour" offer to settle, GEICO's decision to proceed to trial cannot be characterized as a bad faith handling of Feijoo's claim. Even assuming this was not the most prudent course of action, an insurer's good faith obligation is to handle claims brought against its insured with the "same degree of care and diligence as a person of ordinary

---

[4]     Instead, it appears that what Feijoo is offering this court is only "some metaphysical doubt as to the material facts" which is insufficient to establish a genuine issue for trial. *Matsushita*, 475 U.S. at 586.

13

care and prudence should exercise in the management of his own business." *Gutierrez*, 386 So. 2d at 785.

Florida law is clear that even if GEICO exhibited some degree of negligence in executing its good faith duty towards Garcia, such negligence must be the "cause of the excess judgment" or it is immaterial. *Perera*, 35 So. 3d at 903–04; *see also Mesa*, 2015 WL 5059496, at \*5. Feijoo has failed to establish a genuine issue of material fact on this essential element of her bad faith claim. The undisputed record evidence shows that GEICO, from the time the accident occurred until suit was filed, attempted to settle Feijoo's claim by offering amounts within Garcia's policy limits based on its independent review of Feijoo's medical records and her testimony stating that she would not pursue surgery. Feijoo's wavering demands, from the full policy limit to $12,500, despite a claim of over $40,000 in medical bills, to a final pre-trial demand of $25,000, belie the argument that GEICO's actions increased Garcia's exposure to an excess judgment. *Valle*, 394 F. App'x at 557.

Plaintiff need do more than point to an excess judgment as a prima facie case of bad faith. The cause of action for bad faith does not exist to provide unlimited insurance in every case that results in an excess judgment, or in cases involving mistakes in the handling of a claim which amount to no more than ordinary negligence. *See Novoa*, 542 F. App'x at 795. Instead, the action for bad faith is a remedy designed to protect insureds, who, pursuant to their liability insurance contract, have surrendered the decisions regarding settlement and defense of claims brought against them to their insurance company. *See Gutierrez*, 386 So. 2d at 785. Such a

14

cause of action should be reserved for only egregious circumstances of delay and bad faith acts by the insurer.[5]

In short, there is no evidence that GEICO "dropped the ball" in their handling of this case. *See Berges*, 896 So. 2d at 682. The fact that GEICO was unable to successfully reach a settlement prior to trial does not create a genuine issue of material fact which would require that the issue of bad faith be submitted to a jury. Although some courts insist that it is only a "rare case" when summary judgment can be granted on a bad faith claim, this case is a prime candidate for resolution as a matter of law.[6] Feijoo's claims "have dubious factual support" and "even taken as true they only demonstrate that GEICO could have improved its claims process." *Novoa*, 542 F. App'x at 796. Feijoo's allegations of GEICO's focus on profit-sharing and incentives designed to minimize loss payments are examples of conclusory allegations that are insufficient to withstand a motion for summary judgment. *Cordoba*, 419 F.3d at 1181. Further, there is no record evidence showing that GEICO exhibited a "conscious disregard or indifference to the rights of the insured." *Francois v. Illinois Nat. Ins. Co.*, No. 01-CV-8070, 2002 WL 33760405, at *4 (S.D. Fla. Mar. 28, 2002).

---

[5]     Otherwise, insurance companies are undoubtedly left, like ancient seafarers in Greek mythology, between Scylla and Charybdis. They can either settle every claim against their insured for the nominal policy limit, in which case increased costs will be passed on to liability insurance consumers, or they can proceed to trial and face allegations of bad faith upon the entry of an excess judgment. Neither position is conducive to a healthy market.

[6]     On this issue, the Court acknowledges the cogent reasoning of Justice Well's thorough dissent in *Berges. Berges*, 896 So. 2d at 686 ("I do not believe that it is acceptable for the Court to merely say that bad faith is a jury question. It is the Court's responsibility to have logical, objective standards for bad faith and not to avoid setting definitive standards by declaring bad faith to be a jury question."). Other courts are in accord. *Moore v. Geico Gen. Ins. Co.,* No. 8:13-CV-1569-T-24 AE, 2014 WL 2938430, at *14-15 (M.D. Fla. June 30, 2014); *Cosola v. Geico Gen. Ins. Co.*, No. 12-CV-80607, 2013 WL 4854516, at *4 (S.D. Fla. Feb. 28, 2013).

Here, the totality of circumstances demonstrates that GEICO diligently pursued a reasonable settlement, advised Garcia of the risks of an excess judgment, of settlement opportunities with Feijoo, and the probable outcome of litigation. Under these facts, no reasonable jury could find that GEICO breached its duty of good faith to Garcia.

**IV.    CONCLUSION**

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is GRANTED.

All other pending motions are DENIED AS MOOT. The Clerk of Court is instructed to CLOSE this case.

DONE AND ORDERED in Chambers at Miami, Florida, this *30th* day of September, 2015.

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

cc:    All counsel of record

16